UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PETER J. GLEASON,

           Plaintiff,

        -against-


FIRE COMMISSIONER NICHOLAS
SCOPPETTA, individually and in his official
capacity; BATTALION CHIEF GEORGE
BELNAVIS, individually and in his official
capacity; LIEUTENANT EDWARD
BOLES, individually and in his official
capacity; SUPERVISING FIRE MARSHAL
BRIAN GROGAN, individually and in his
official capacity; CAPTAIN PATRICK
REYNOLDS, individually and in his official
capacity; THE UNIFORMED FIRE
OFFICERS ASSOCIATION; and THE CITY
OF NEW YORK.

           Defendants.
-------------------------------------------------------x

**VERIFIED FIRST AMENDED**
**COMPLAINT**
**JURY TRIAL DEMANDED**


**12 Civ. 4123 (RJD)(RLM)**

      Plaintiff, Peter J. Gleason, by his attorneys, DUNNINGTON, BARTHOLOW &

MILLER, and as for his Verified First Amended Complaint respectfully alleges as follows:

## I.

## PRELIMINARY STATEMENT

      Plaintiff is a retired firefighter now admitted to practice law in New York.  This action is

based on the named individual Defendants' unlawful search, seizure, and subsequent publication

and public dissemination of Plaintiff's confidential medical records and information derived

therefrom in retaliation for Plaintiff acting as legal counsel for a plaintiff in an action against the

FDNY. The City of New York acts as legal custodian of medical records of former firefighters

1

maintained in a depository in Kings County.  Firefighters have constitutionally-protected liberty
and property interests in the confidentiality of their medical records that are protected from
unlawful searches and seizures, publications and public disseminations, and deprivations without
notice and a meaningful opportunity to be heard.  These medical records are confidential and
protected from unlawful government search and seizure and public dissemination by federal
statute and by the Fourth Amendment to the U.S. Constitution.   Additionally, Plaintiff has a
property interest in the medical records protected by the Due Process Clause of the U.S.
Constitution.   Defendants owe firefighters a duty of care to maintain the confidentiality of such
records.

In early 2006, Plaintiff filed a notice of claim against the City of New York and the
Chief Fire Marshal of the FDNY on behalf of William Kregler, who was also a retired
firefighter.  Kregler claimed that the City of New York and the Chief Fire Marshal of the FDNY
violated his First Amendment rights by retaliating against him by terminating his application for
appointment to the position of City Marshal because of his public support of Robert Morgenthau
who was then a candidate for District Attorney. *Kregler v. City of New York*, 375 Fed.Appx. 143
(2d Cir. 2010).

On or around July, 2009, Plaintiff was a candidate for City Council for the First
Councilmanic District (lower Manhattan).   As part of the process, Plaintiff sought the
endorsement of the Uniformed Fire Officers Association. During a meeting with officers of that
Association, Plaintiff was bombarded with hostile questions regarding his representation of
Kregler.

Shortly thereafter, on or around August 19, 2009, one or more of the named individual
Defendants unreasonably searched and seized Plaintiff's confidential medical records without a

2

search warrant.   On or more of the named individual Defendants then released Plaintiff's medical records to the *Village Voice,* a supporter of Plaintiff's principal political adversary.  By releasing Plaintiff's confidential medical records, the named individual Defendants intended to and did retaliate against Plaintiff for speech that is constitutionally protected; inflicted an adverse employment action on Plaintiff; maliciously inflicted extreme emotional, financial and reputational damage upon Plaintiff; and substantially interfered with Plaintiff's rights of political association, public association, and liberty to effectively represent the individuals and entities of his choice guaranteed by the First Amendment to the United States Constitution.  The unlawful search, seizure, publication and public dissemination was arbitrary, served no legitimate governmental interest and was motivated solely by a desire to punish Plaintiff for his representation and to serve the political animus of the individual Defendants named in this action.  Defendants also republished the *Village Voice* article to firefighters by forwarding a link via email blast.

In accessing Plaintiff's medical records without court authorization and without any legitimate government interest and then publishing Plaintiff's medical records, the named individual Defendants wanted to punish Plaintiff for his representation of a client and did so, effectively destroying his candidacy and damaging his reputation.   The named individual Defendants' behavior was extreme and outrageous, warranting punitive damages.   Four aggravating factors show an absence of mistake and calculated malice.  *First*, one or more of the named individual Defendants released the records shortly prior to the election in such a manner that Plaintiff would not have the time to respond to or correct misleading published statements. *Second,* one or more of the named individual Defendants released the records to a *Village Voice* reporter known for vitriolic personal attacks on political adversaries.  The named individual

Defendants' leak was a dirty trick that effectively destroyed Plaintiff's political campaign and sent a chilling message to any former firefighter willing to speak out against the FDNY. *Third*, the named individual Defendants' retaliation against Plaintiff is extreme and outrageous because it shows contempt for judicial proceedings and a willingness to use confidential medical records for unlawful purposes and to reward its officers engaging in such illegal conduct. *Fourth,* the named individual Defendants' retaliation is part of a municipal policy and a pattern and practice of retaliation against former and current firefighters who exercise their First Amendment and other Constitutionally-protected rights.

## II.

### NATURE OF THE ACTION

1.      This is a civil action seeking a declaratory judgment, equitable relief, a preliminary injunction, damages, costs, and attorney's fees brought pursuant to 28 U.S.C §1331, 28 U.S.C. §§2201-2202, 42 U.S.C. §1983, 42 U.S.C. §1988 and Rule 65 of the Federal Rules of Civil Procedure, to redress violations of the Plaintiff's right under the Due Process Clause and the 1st, 4th, 5th and 14th Amendments to the United States Constitution.

2.      The Plaintiff seeks to secure, among other relief requested herein, a declaratory judgment declaring that the FDNY's release of his confidential medical records is in conflict with the common law, the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and United States law, and also violates Plaintiff's privacy rights guaranteed by the U.S. Constitution.

3.      In addition, the Plaintiff also seeks to secure, among other relief requested herein, injunctive relief enjoining the FDNY from further violations of Plaintiff's rights.

4

4.      This court has supplemental jurisdiction over state law claims alleged herein because such claims are based on the same operative facts.

## III.

## JURISDICTION  AND  VENUE

5.      Jurisdiction of the court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution and laws of the United States and involves a conflict between state action and the laws and regulations of the United States under the Supremacy Clause of the United States Constitution.

6.      Jurisdiction of the court is also invoked pursuant to 28 U.S.C. §1343(a)(3) and §1343(a)(4) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

7.      Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201(a) and 2202.

8.      Plaintiff seeks permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

9.      Plaintiff has standing to commence and maintain this action because he is aggrieved by the state action that conflicts with both: (i) United States laws and regulations that are the subject matter of this lawsuit; and (ii) Plaintiff's rights protected by United States law, regulations, and the U.S. Constitution.

10.     Plaintiff seeks punitive damages and reasonable attorney's fees as part of the costs

authorized to the prevailing party in an action pursuant to 42 U.S.C. §1983, predicated upon 42

U.S.C. §1988 and 42 U.S.C. §2000.

11.     Venue is proper in the Eastern District of New York, pursuant to 29 U.S.C. §1331

because a substantial part of the events giving rise to the claim occurred in Kings County, New

York, and the Defendants' actual place of business and/or employ is within the Eastern District

of New York.

## IV.

## THE PARTIES

12.     At all relevant times mentioned herein, Plaintiff Peter J. Gleason was and still is

an individual residing at 53 North Moore Street, New York, NY 10013 and an attorney in good

standing licensed to practice law in New York State.

13.     Defendant Brian Grogan at all times relevant was a Supervising Fire Marshal in

the FDNY's Bureau of Fire Investigation.  He resides at 14 Hauser Street, Bohemia, New York

11716.

14.     Defendant Nicholas Scoppetta at all times relevant was the Fire Commissioner for

the FDNY.  Fire Commissioner Scoppetta had a business address of FDNY HQ, 9 MetroTech

Center, Brooklyn, New York 11201 and a home address of 350 Central Park West, New York,

NY 10025.

15.     Defendant George Belnavis at all times relevant was a Lieutenant or Battalion

Chief of the FDNY.  Battalion Chief Belnavis has a business address of FDNY HQ, 9 MetroTech

Center, Brooklyn, New York 11201.

6

16.     Defendant Edward Boles is a Lieutenant of the FDNY. Lieutenant Boles has a business address of FDNY HQ, 9 MetroTech Center, Brooklyn, New York 11201.

17.     Defendant Patrick Reynolds is a Captain of the FDNY. Captain Reynolds has a business address of FDNY HQ, 9 MetroTech Center, Brooklyn, New York 11201.

18.     Defendant UFOA is an unincorporated labor association that represents the interests of Fire Officers in the FDNY. The UFOA's principal office is at 225 Broadway, Suite 411, New York, New York 10007. Defendants Belnavis, Boles and Reynolds at all relevant times were Executive Board members of the UFOA, acting as labor representatives of uniformed fire officers serving the FDNY.

19.     Defendant the City of New York is a municipal corporation and is an employer and/or agent of an employer within the meaning of 42 U.S.C. §2000e(b), as amended. Its principal office is at 9 MetroTech Center, Brooklyn, New York 11201.

**V.**

**ALLEGATIONS RELEVANT TO ALL CLAIMS**

**A.     BACKGROUND**

20.     From 1986 through 1996, Plaintiff served as a firefighter in the employ of the FDNY.

21.     In 1996, Plaintiff retired due to a back injury suffered on the job.

22.     Plaintiff's injury was caused by a truck hitting a stalled vehicle in which the Plaintiff sat.

23.     Plaintiff's medical records included an MRI showing that the Plaintiff had a serious injury as defined by New York state law. The FDNY maintains medical records of all firefighters, current and former.

7

24.     The FDNY and its officers owe a duty of care to past and present firefighters to maintain the confidentiality of such records.

25.     This duty is founded in the common law and in state and federal law, including the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. §1320d *et seq.*

**1. The *Kregler* litigation that led to Defendants' desire to retaliate against Plaintiff.**

26.     In 2006, Plaintiff filed a Notice of Claim against the City of New York and the Chief Fire Marshal of the FDNY on behalf of William Kregler.

27.     Also in 2006, Plaintiff acted as lead trial counsel in representing Kregler in meetings before the New York City Department of Investigation.

28.     Kregler claimed that he had been denied the position of City Marshal in retaliation for his support of Robert Morgenthau.

29.     Kregler later filed a § 1983 suit in the U.S. District Court for the Southern District of New York for violations of his First Amendment rights.

30.     Plaintiff is not counsel of record for Kregler in the SDNY matter.

**2. Plaintiff's City Council candidacy and Defendants' conspiracy to undermine that candidacy as retaliation for Plaintiff's representation of Kregler.**

31.     In 2009, Plaintiff became a candidate for a New York City Council seat in the First Councilmanic District (Lower Manhattan).

32.     In the summer of 2009, Plaintiff succeeded temporarily in keeping the incumbent City Council member off the ballot and in blocking the incumbent from receiving campaign matching funds.

8

33.     Accordingly, the media described Plaintiff as one of the "front runners" in the race.

34.     The UFOA, the labor association that represents the interests of Fire Officers in the FDNY, routinely endorses candidates for political office in federal and state races.

35.     In furtherance of his campaign, in June or July of 2009, Plaintiff appeared before the UFOA to seek its endorsement.

36.     At the beginning of the meeting, Defendant Boles informed Plaintiff, in sum and substance, that Defendant Grogan was "pissed" at Plaintiff.

37.     When Plaintiff asked for an explanation, Defendants Boles and Belnavis explained to Plaintiff that Defendant Grogan, a named defendant in the *Kregler* action, was "pissed" at Plaintiff as a result of his representation of Kregler.

38.     Plaintiff informed Defendants Boles and Belnavis that he no longer represented Kregler because he might be called as a witness in the *Kregler* action.

39.     Defendants Boles and Belnavis explained to Plaintiff that Defendant Grogan was still "pissed."

40.     Defendants Boles and Belnavis further explained to Plaintiff that there was no way to undo Plaintiff's representation of Kregler.

41.     Upon information and belief, in and around June or July of 2009, Defendants Grogan, Belnavis, Boles, and Reynolds entered into an agreement that they would punish Plaintiff and make a public example out of him to retaliate against him for his prior representation of Kregler.

9

42.     In furtherance of that agreement, Defendants Grogan, Belnavis, Boles, and Reynolds conspired to dig up negative information on Plaintiff to destroy Plaintiff's City Council candidacy and to plant a negative story about Plaintiff in the press.

43.     In furtherance of this conspiracy, upon information and belief, one or more of the named individual Defendants, with the consent of the other named individual Defendants, used a false login to access and print out computerized summaries of Plaintiff's medical records (the "medical records") through a computer belonging to the Bureau of Fire Investigations.

44.     The medical records were accessed without legal authority or authorization from Plaintiff.

45.     The medical records were accessed without Plaintiff's knowledge or consent.

46.     The medical records were confidential.

47.     In furtherance of this conspiracy, upon information and belief, one or more of the named individual Defendants, with the consent of the other named individual Defendants, urged reporter Wayne Barrett to write a negative and false article about Plaintiff.

48.     Shortly before the election, on or before August 19, 2009, one or more of the named individual Defendants, with the consent of the other named individual Defendants, provided reporter Wayne Barrett with a copy of the medical records knowing and intending that confidential information in the medical records would be published in the *Village Voice*.

49.     Upon information and belief, one of the named individual Defendants, with the consent of the other named individual Defendants, lobbied Wayne Barrett to publish a false statement regarding the medical records.

50.     Upon information and belief, one of the named individual Defendants, with the consent of the other named individual Defendants, pressured Wayne Barrett to falsely imply that

Plaintiff had falsified an injury in order to create hostility and animus towards Plaintiff as retaliation for his representation of Kregler.

51.     Plaintiff's claims in this action do not depend on the truth or falsehood of the *Village Voice* article, but are based on the invasion and publication of medical records and the City's failure to maintain the confidentiality of such records.

52.     The falsity of the *Village Voice* article, however, is indicative of the extreme malice and animus that are so shocking as to support the award of punitive damages and is also probative of the retaliatory intent of Defendants.

53.     The City's refusal to investigate and punish the wrongdoers evidences an institutionalized hostility toward rank and file firefighters victimized by FDNY political insiders such as the named individual Defendants.

54.     On August 19, 2009, the *Village Voice* published an article authored by Wayne Barrett and Georgia Bobley titled: *"District 1 Council Race: The Skinny on Challenger Pete Gleason."*

55.     The article was based substantially on Plaintiff's medical records.

56.     The article described a 1993 incident in which Plaintiff had been injured and referred to an "inconclusive" CAT scan.

57.     However, the CAT scan was not "inconclusive" and indeed showed a serious back injury: a herniated disk that was so severe that it impacted the thecal sac.

58.     Indeed, when interviewing Plaintiff, *Village Voice* intern Georgia Bobley conceded, referring to the CAT scan, "that's a serious injury."

11

59.     Upon information and belief, on August 19, 2009 Defendant Grogan openly took responsibility for the article's publication and declared victory in preventing Plaintiff from obtaining the UFOA's endorsement.

60.     On August 20, 2009, at 9:45 a.m., Defendant Reynolds distributed the *Village Voice* article to firefighters via email blast without any comment.  Attached hereto as Exhibit "A" is an email of Patrick Reynolds dated August 20, 2009.

61.     Publication of the *Village Voice* article caused Plaintiff extreme reputational damage.

62.     Publication of the *Village Voice* article crippled Plaintiff's political campaign and chilled Plaintiff from engaging in subsequent political activity, including running for office, conversing with political candidates, and publicly expressing his political views.

63.     Margaret Chin won the City Council race and is currently still serving.

64.     In or around October, 2010, the UFOA gave Wayne Barrett an award for outstanding journalism.

65.     Upon information and belief, the individual named Defendants orchestrated the award in part to reward Barrett for publishing the negative article about Plaintiff.

**3.    The City of New York's custom of turning a blind eye to breaches of uniformed firefighters' privacy.**

66.     Following the *Village Voice* article's publication, Plaintiff filed a complaint with the FDNY, seeking an investigation into the theft and publication of his medical records.

67.     After filing the complaint with the FDNY, Plaintiff met with FDNY Chief Investigator Tim Crowe to discuss the FDNY's investigation into the release of Plaintiff's medical records and subsequent publication.

68.     Chief Investigator Crowe explained to Plaintiff that City has security measures to protect against breaches of high ranking officers' private records.

69.     Chief Investigator Crowe explained to Plaintiff that Plaintiff and other low-ranking firefighters were not important enough to be protected by such security measures.

70.     Upon information and belief, when employed, such measures are effective.

71.     Upon information and belief, the City does not employ security measures to protect lower-ranking officials' privacy, such as Plaintiff here.

72.     The City's failure to protect firefighters' medical records is so reckless as to constitute an unofficial policy of permitting officers to violate the rights of the rank and file firefighters at will and without threat of punishment.

73.     Plaintiff also met with FDNY Assistant Commissioner Robert A. Wallace to discuss the FDNY's investigation into the release of Plaintiff's medical records.

74.     Over a period of more than three and a half months, Assistant Commissioner Wallace repeatedly assured Plaintiff that an investigation into the release of his medical records was occurring. Attached hereto as Exhibit "B" is an e-mail chain between Plaintiff and Assistant Commissioner Wallace re: the FDNY's investigation into the release of Plaintiff's medical records.

75.     Upon information and belief, these assurances were a sham.

76.     Upon information and belief, those who violated Plaintiff's rights were never investigated or disciplined.

77.     Upon information and belief, the City actively and routinely ignores breaches of lower-ranking officials' privacy, such as Plaintiff here.

78.     Upon information and belief, the City routinely fails to punish those responsible for breaches of lower-ranking officials' privacy, such as Plaintiff here.

79.     This atmosphere of lawlessness, laxity, and retaliation comes directly from the top: Defendant Nicholas Scoppetta is responsible for the utter failure to maintain proper security and for an FDNY culture where such breaches of firefighter confidentiality are not punished.

**B.      THE DAMAGE DONE:  PLAINTIFF SUFFERS AND CONTINUES TO SUFFER INJURY REQUIRING JUDICIAL INTERVENTION.**

**B.1.    Deprivation of Liberty Interest**

80.     Defendants' actions have deprived Plaintiff of his liberty interests including, but not limited to, Plaintiff's constitutionally protected right to:

- Privacy in his medical records;

- Represent clients of his choice without government interference and retaliation;

- Engage in political activity and association; and

- Be free of the threat that Defendants will further attack him and violate his rights in the future.

**B.2.    Deprivation of Property Interest**

81.     Defendants' actions have deprived Plaintiff of his property interest in his employment and in his license to practice law.

82.     Defendants' actions have deprived Plaintiff of his property interest in the confidentiality of the medical records.

## VI.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
#### (1983 – First and Fourteenth Amendments)
#### (Against Defendants City and Scoppetta)

83.     Plaintiff repeats and re-alleges the allegations set forth within paragraphs 1 through 82 herein.

84.     The City has security measures to protect against breaches of high ranking officers' private records.

85.     Upon information and belief, when employed, such measures are effective.

86.     The City does not employ security measures to protect lower-ranking officials' privacy, such as Plaintiff here.

87.     Upon information and belief, the City actively and routinely ignores breaches of lower-ranking officials' privacy, such as Plaintiff here.

88.     Upon information and belief, the City routinely fails to punish those responsible for breaches of lower-ranking officials' privacy, such as Plaintiff here.

89.     This atmosphere of lawlessness, laxity, and retaliation comes directly from the top: Defendant Nicholas Scoppetta is responsible for the utter failure to maintain proper security and for an FDNY culture where such breaches of firefighter confidentiality are not punished.

90.     This atmosphere of lawless, laxity, and retaliation enabled Defendants Boles, Belnavis, Grogan, and Reynolds to access and publish Plaintiff's medical records in violation of Plaintiff's rights to free speech and association protected by the First Amendment to the U.S. Constitution.

15

91.     Since the City is a State actor, the City's violations of Plaintiff's liberty rights protected by the First Amendment to the U.S. Constitution violate the 14th Amendment to the U.S. Constitution.

92.     The City's custom of turning a blind eye to breaches of uniformed firefighters' privacy proximately caused significant injuries, damages, and losses to Plaintiff's rights to free speech and association protected by the First Amendment to the U.S. Constitution.


## SECOND CLAIM FOR RELIEF
### (1983 – First and Fourteenth Amendments)
### (Against Defendants Belnavis, Boles, Grogan, Reynolds, and UFOA)

93.     Plaintiff repeats and re-alleges the allegations set forth within paragraphs 1 through 92 herein.

94.     Plaintiff exercised his constitutionally protected right to free speech and association by representing William Kregler.

95.     The Defendants had no legitimate government interest in accessing or publishing Plaintiff's medical records.

96.     Defendants acted under color of state law and authority in maintaining and accessing the medical records.

97.     Defendants engaged in the conduct described by this Complaint intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's rights to free speech and association protected by the First Amendment to the U.S. Constitution.

98.     Defendants' actions caused Plaintiff to suffer injuries that chilled Plaintiff from continuing to engage in the constitutionally protected activity of representing persons asserting claims against the FDNY.

99.     Defendants' actions caused Plaintiff to suffer injuries that chilled Plaintiff from engaging in constitutionally protected political speech and association.

100.    Since the Defendants acted under color of state law in depriving Plaintiff of his liberty interests protected by the First Amendment to the U.S. Constitution, Defendants violated the Fourteenth Amendment to the U.S. Constitution.

101.    Defendants' conduct proximately caused significant injuries, damages and losses to Plaintiff's rights to free speech and association protected by the First Amendment to the U.S. Constitution.

## THIRD CLAIM FOR RELIEF
### (1983 – Fourth and Fourteenth Amendments)
### (Against All Defendants)

102.    Plaintiff repeats and re-alleges the allegations set forth within paragraphs 1 through 101 herein.

103.    Plaintiff enjoys a privacy interest in the confidentiality of his medical records under federal statutory law, including but not limited to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

104.    Defendants, while acting under color of state law, misappropriated, or in the case of the City permitted the misappropriation of (by turning a blind eye), Plaintiff's confidential medical records.

105.    Defendants, while acting under color of state law, publicized, or in the case of the City permitted the publication of, Plaintiff's confidential medical records.

106.     Plaintiff did not authorize Defendants to access or publicize the medical records, through a HIPAA release form or otherwise.  Attached hereto as Exhibit "C" is an OCA Official Form No. 960 "Authorization For Release of Health Information Pursuant to HIPAA."

107.     The misappropriation and publication of Plaintiff's medical records violated Plaintiff's privacy rights in the confidentiality of his medical records guaranteed by the Fourth Amendment to the U.S. Constitution.

108.     Defendants acted without cause or justification and intentionally, knowingly, recklessly, and excessively retaliated against Plaintiff in a manner resulting in violation of Plaintiff's Fourth Amendment rights.

109.     Since Defendants are State actors and individuals acting under color of state law, Defendants' violation of Plaintiff's privacy rights protected by the Fourth Amendment to the U.S. Constitution violates the Fourteenth Amendment to the U.S. Constitution.

110.     Defendants' conduct proximately caused significant injuries, damages, and losses to Plaintiff's right to privacy protected by the Fourth Amendment to the U.S. Constitution.


**FOURTH CLAIM FOR RELIEF**
**(1983 – Fifth and Fourteenth Amendment)**
**(Against All Defendants)**


111.     Plaintiff repeats and re-alleges the allegations set forth within paragraphs 1 through 110 herein.

112.      Plaintiff enjoys a property interest in the confidentiality of his medical records under federal statutory law, including but not limited to HIPAA.

18

113.    Defendants, while acting under color of state law, misappropriated, or in the case of the City permitted the misappropriation of (by turning a blind eye), Plaintiff's confidential medical records.

114.    Defendants, while acting under color of state law, publicized, or in the case of the City permitted the publication of, Plaintiff's confidential medical records.

115.    Plaintiff did not authorize Defendants to access or publicize the medical records, through a HIPAA release form or otherwise.

116.    Defendants' misappropriation and publication of Plaintiff's medical records violated Plaintiff's property rights guaranteed by the Fifth Amendment to the U.S. Constitution.

117.    Since Defendants are State actors and individuals acting under color of state law, Defendants' violation of Plaintiff's property rights protected by the Fifth Amendment to the U.S. Constitution violates the Fourteenth Amendment to the U.S. Constitution.

118.    Defendants' conduct proximately caused significant injuries, damages, and losses to Plaintiff's right to privacy protected by the Fifth Amendment to the U.S. Constitution.


**FIFTH CLAIM FOR RELIEF**
**(1983 – Fourteenth Amendment (Substantive Due Process))**
**(Against All Defendants)**


119.    Plaintiff repeats and re-alleges the allegations set forth within paragraphs 1 through 118 herein.

120.    Plaintiff enjoys a property and privacy interest in the confidentiality of his medical records under federal statutory law, including but not limited to HIPAA.

121.   Defendants, while acting under color of state law, misappropriated, or in the case of the City permitted the misappropriation of (by turning a blind eye), Plaintiff's confidential medical records.

122.   Defendants, while acting under color of state law, publicized, or in the case of the City permitted the publication of, Plaintiff's confidential medical records.

123.   Plaintiff did not authorize Defendants to access or publicize the medical records, through a HIPAA release form or otherwise.

124.   A person's right to the integrity and privacy of his medical rights is so deeply fundamental to the order and concept of liberty that it necessarily must be protected by the doctrine of substantive due process.

125.   Defendants acted without cause or justification and intentionally, knowingly, recklessly, and excessively as alleged above in a manner resulting in violation of Plaintiff's Constitutionally-protected liberty, privacy, and property rights that shocks the conscience of any reasonable person.

**SIXTH CLAIM FOR RELIEF**
**(1983 – CONSPIRACY)**
**(Against Defendants Belnavis, Boles, Grogan, Reynolds, and UFOA)**

126.   Plaintiff repeats and re-alleges the allegations set forth within paragraphs 1 through 125 herein.

127.   Upon information and belief, Defendants Belnavis, Boles, Grogan, and Reynolds, conspired with one another to punish Plaintiff for his representation of Kregler.

128.   In furtherance of that conspiracy, one or more of the named individual Defendants used a false login to access and print out computerized summaries of Plaintiff's medical records.

129.    In furtherance of that conspiracy, one or more of the named individual Defendants released those medical records to reporter Wayne Barrett.

130.    In furtherance of that conspiracy, one or more of the named individual Defendants pressured Wayne Barrett to publish a false statement regarding Plaintiff's medical records in order to create hostility and animus towards Plaintiff.

131.    Defendants' conspiracy and acts in furtherance thereof deprived Plaintiff of his liberty, privacy, and property interests protected by the First, Fourth, and Fifth Amendments to the U.S. Constitution.

132.    Defendants' conspiracy proximately caused significant injuries, damages and losses to Plaintiff's liberty, privacy, and property interests protected by the First, Fourth, and Fifth Amendment to the U.S. Constitution.

**SEVENTH CLAIM FOR RELIEF**
**(Declaratory and Injunctive Relief)**
**(Against All Defendants)**

133.    Plaintiff repeats and re-alleges the allegations set forth within paragraphs 1 through 132 herein.

134.    Defendants' conduct continues to deprive Plaintiff of his constitutionally protected life, liberty and property interests.

135.    Defendants acted without cause or justification and intentionally, knowingly, recklessly, and excessively as alleged above in a manner resulting in violation of Plaintiff's Constitutionally-protected rights that shocks the conscience of any reasonable person.

136.    Specifically, Defendants have retaliated against and punished Plaintiff for representing William Kregler and by failing to discipline those who violated Plaintiff's rights.

137.    Since Plaintiff has received no assurances that these violations have been investigated or that security measures have been put in place, Plaintiff requests declaratory and injunctive relief herein requiring the City to properly secure Plaintiff's medical records.

138.    Defendants' conduct proximately caused (and continues to threaten to cause) significant injuries, damages, and losses to Plaintiff.

139.    As a result of the grave and significant dangers presented here, no type of post-deprivation remedy can mitigate the violation of Plaintiff's constitutional rights here.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands the following relief:

**As for Claims 1, 2, 3, 4, 5, 6, and 7 (Under 42 U.S.C. § 1983):**

1.    That the court grant an award of compensatory damages against Defendants, in such an amount determined at trial by jury including pre- and post-judgment interest;

2.    That the court grant affirmative injunctive relief, directing the Defendants to implement security measures;

3.    That the court declare that to the extent FDNY security measures permit usage of confidential medical records for political reasons, such measures conflict with federal law and such security measures are unconstitutional facially or, in the alternative, as applied;

4.    For an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988(b);

5.    For an award for reimbursement of any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c);

6.     For punitive damages that are reasonable and just under these circumstances and such other and further relief as this Court may deem just and proper; and

7.     Awarding costs, damages, reasonable attorney's fees, punitive damages, and such other and further relief as is just and proper including pre- and post-judgment interest.

Dated: New York
       November 13, 2012

                              **DUNNINGTON BARTHOLOW & MILLER LLP**

                              By: _____
                                   Raymond J. Dowd
                                   1359 Broadway, Suite 600
                                   New York, New York 10018
                                   Phone:  (212) 682-8811
                                   Facsimile:  (212) 661-7769

## VERIFICATION

I declare, subject to the penalties of perjury under the laws of the United States that the foregoing is true and correct, except where alleged upon information and belief, and with respect to those allegations, I believe them to be true.

Dated:  New York, New York
         November 13, 2012

Peter J. Gleason

# EXHIBIT

# A

**From:** Patrick Reynolds <preynolds@UFOA.org>
**Date:** August 20, 2009, 9:45:13 AM EDT
**Subject: former firefighter running for council**

http://blogs.villagevoice.com/runninscared/archives/2009/08/district_1_coun.php

Patrick Reynolds
Recording Secretary
UFOA
225 Broadway Suite 401
New York, NY 10007
Office: 212 293- 9300
Fax:   212 292-1560

# EXHIBIT

# B

**From:** pjgleason <pjgleason@aol.com>

**To:** wallacr <wallacr@fdny.nyc.gov>; PJGleason <PJGleason@aol.com>

**Subject:** Meeting

**Date:** Mon, Aug 8, 2011 7:58 am

Dear Commissioner Wallace,

Thank you again for agreeing to meet with me late last month to discuss certain concerns I have concerning the FDNY.

While there is no need to rehash all my concerns here;

I look forward to the Department's response concerning my stolen medical records.

As well as the possibility of transferring my client (and brother, Richard) during the pendency of the Kregler litigation.

Thank you in advance for your attention in this matter.

I remain,

Peter J. Gleason, Esq.
(212) 431-5030

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (PJGleason@aol.com), and destroy the original message. Thank you.

**From:** Robert Wallace <wallacr@fdny.nyc.gov>

**To:** pjgleason <pjgleason@aol.com>

**Subject:** Re: Meeting

**Date:** Thu, Aug 18, 2011 5:14 pm

Dear Mr. Gleason:

My understanding was that you wanted us to investigate the the possible release
of your medical information by Department personnel, not the theft of your
medical records.  Please correct me if I am mistaken.

Regarding the possible transfer of your brother, SFM Richard Gleason, I do not
believe the supervisory conference he was given warrants a transfer; however, I
am happy to have an investigator meet with him directly so that he can fully
elaborate on any concerns he has with his current assignment or any allegation
of improper treatment.

I will advise when we have completed our investigation into the various issues
you raised in our meeting.

Sincerely,
Robert A. Wallace

Confidentiality Notice:
This message may contain information that is
confidential or privileged.

If you are not the intended recipient,
Please advise the sender immediately and delete this message.

Re: Meeting                                                                                                                11/18/12 6:34 PM

**From:** pjgleason <pjgleason@aol.com>

   **To:** wallacr <wallacr@fdny.nyc.gov>; PJGleason <PJGleason@aol.com>

**Subject:** Re: Meeting

   **Date:** Mon, Aug 22, 2011 12:54 pm

Dear Commissioner,

First let me thank you for your prompt response.

I apologize if I confused the issue of the fact that a journalist reported that he reviewed my FDNY records with theft. It is my contention that whether he viewed them or had possession of them that it was unauthorized and hence a theft.

The issue with my brother is not as straightforward as you outlined below and again I apologize if I was not clear during our meeting. Here, I am of the impression that former Chief Fire Marshal Louis Garcia and his friend retired Supervising Fire Marshal James Kelty still wields influence within the Bureau of Fire Investigation (BFI). My representation of retired Fire Marshal William Kregler in a Federal civil rights case where Garcia is a defendant has been a source of great consternation with the UFOA and various members of BFI.

Additionally, my representation of the two NYPD officers struck by an allegedly intoxicated Garcia last December emanated from what my investigation revealed as a holiday party attended by the executive staff of BFI.

While these concerns are not all inclusive I would rather the Federal case be adjudicated without my brother under the purview of individuals who are beholden to Garcia.

Regards,

Peter J. Gleason, Esq.
(212) 431-5030

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (PJGleason@aol.com), and destroy the original message. Thank you.

-----Original Message-----
From: Robert Wallace <wallacr@fdny.nyc.gov>
To: pjgleason <pjgleason@aol.com>
Sent: Thu, Aug 18, 2011 1:14 pm
Subject: Re: Meeting

Dear Mr. Gleason:

My understanding was that you wanted us to investigate the the possible release of your medical information by Department personnel, not the theft of your medical records. Please correct me if I am mistaken.

Regarding the possible transfer of your brother, SFM Richard Gleason, I do not believe the supervisory conference he was given warrants a transfer; however, I am happy to have an investigator meet with him directly so that he can fully elaborate on any concerns he has with his current assignment or any allegation

of improper treatment.

I will advise when we have completed our investigation into the various issues
you raised in our meeting.

Sincerely,
Robert A. Wallace

Confidentiality Notice:
This message may contain information that is
confidential or privileged.

If you are not the intended recipient,
Please advise the sender immediately and delete this message.

From: pjgleason <pjgleason@aol.com>

To: wallacr <wallacr@fdny.nyc.gov>; PJGleason <PJGleason@aol.com>

Subject: Medical Records

Date: Tue, Oct 18, 2011 4:38 pm

Commissioner,

Is there any update on the investigation concerning my stolen FDNY records?

Regards,

Peter J. Gleason, Esq.
(212) 431-5030

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (PJGleason@aol.com), and destroy the original message. Thank you.

**From:** pjgleason <pjgleason@aol.com>

**To:** wallacr <wallacr@fdny.nyc.gov>; PJGleason <PJGleason@aol.com>

**Subject:** Medical Records

**Date:** Fri, Nov 25, 2011 10:42 am

Dear Commissioner,

I hope you and your family had a nice Thanksgiving.

Just following up to see if the department has made any headway into determining the facts concerning the release of my FDNY medical records.

Regards,

Peter J. Gleason, Esq.
(212) 431-5030

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (PJGleason@aol.com), and destroy the original message. Thank you.

**From:** Robert Wallace <wallacr@fdny.nyc.gov>

**To:** pjgleason <pjgleason@aol.com>

**Subject:** Re: Medical Records

**Date:** Fri, Nov 25, 2011 10:58 am

Mr. Gleason:

Thank you for the well-wishes; I hope you and yours enjoyed the day as well. Matter is progressing, though it is taking some time as I am also addressing the claims regarding BFI that you initially brought to my attention. Will advise when we are getting closer to a conclusion. I know you will advise me if you come across additional information relevant to the complaints.

Enjoy the weekend.

Rob Wallace

Confidentiality Notice:
This message may contain information that is
confidential or privileged.

If you are not the intended recipient,
Please advise the sender immediately and delete this message.

**From:** pjgleason <pjgleason@aol.com>
   **To:** wallacr <wallacr@fdny.nyc.gov>; PJGleason <PJGleason@aol.com>
**Subject:** Re: Medical Records
   **Date:** Fri, Nov 25, 2011 11:06 am

Commissioner,

Thank you for the update.

Peter J. Gleason, Esq.
(212) 431-5030

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (PJGleason@aol.com), and destroy the original message. Thank you.


-----Original Message-----
From: Robert Wallace <wallacr@fdny.nyc.gov>
To: pjgleason <pjgleason@aol.com>
Sent: Fri, Nov 25, 2011 5:58 am
Subject: Re: Medical Records

Mr. Gleason:

Thank you for the well-wishes; I hope you and yours enjoyed the day as well. Matter is progressing, though it is taking some time as I am also addressing the claims regarding BFI that you initially brought to my attention. Will advise when we are getting closer to a conclusion.  I know you will advise me if you come across additional information relevant to the complaints.

Enjoy the weekend.

Rob Wallace




Confidentiality Notice:
 This message may contain information that is
 confidential or privileged.

 If you are not the intended recipient,
 Please advise the sender immediately and delete this message.

# EXHIBIT

# C

OCA Official Form No.: 960

# AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
## [This form has been approved by the New York State Department of Health]

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| | | |

| Patient Address |
|---|
| |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA),  I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT,** except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a).  In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law.  I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization.  If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450.  These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below.  I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

| 7. Name and address of health provider or entity to release this information: |
|---|
| |

| 8. Name and address of person(s) or category of person to whom this information will be sent: |
|---|
| |

9(a).  Specific information to be released:

❑ Medical Record from (insert date) _____ to (insert date) _____

❑ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.

❑ Other: _____                    Include: (*Indicate by Initialing*)

_____                    _____ **Alcohol/Drug Treatment**

_____ **Mental Health Information**

**Authorization to Discuss Health Information**                    _____ **HIV-Related Information**

(b) ❑ By initialing here _____ I authorize _____

                     Initials                              Name of individual health care provider

to discuss my health information with my attorney, or a governmental agency, listed here:

_____

(Attorney/Firm Name or Governmental Agency Name)

| 10.  Reason for release of information:<br>❑ At request of individual<br>❑ Other: | 11.  Date or event on which this authorization will expire: |
|---|---|
| 12.  If not the patient, name of person signing form: | 13.  Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

_____                    Date: _____

Signature of patient or representative authorized by law.

\*   **Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.**

Instructions for the Use
of the HIPAA-compliant Authorization Form to
Release Health Information Needed for Litigation


This form is the product of a collaborative process between the New York State Office of Court Administration, representatives of the medical provider community in New York, and the bench and bar, designed to produce a standard official form that complies with the privacy requirements of the federal Health Insurance Portability and Accountability Act ("HIPAA") and its implementing regulations, to be used to authorize the release of health information needed for litigation in New York State courts.  It can, however, be used more broadly than this and be used before litigation has been commenced, or whenever counsel would find it useful.

The goal was to produce a standard HIPAA-compliant official form to obviate the current disputes which often take place as to whether health information requests made in the course of litigation meet the requirements of the HIPAA Privacy Rule.  It should be noted, though, that the form is optional.  This form may be filled out on line and downloaded to be signed by hand, or downloaded and filled out entirely on paper.

When filing out Item 11, which requests the date or event when the authorization will expire, the person filling out the form may designate an event such as "at the conclusion of my court case" or provide a specific date amount of time, such as "3 years from this date".

If a patient seeks to authorize the release of his or her entire medical record, but only from a certain date, the first two boxes in section 9(a) should both be checked, and the relevant date inserted on the first line containing the first box.